We're going to hear the last case on the calendar this morning, which is No. 15-56434, Flores v. Lynch. Mr. Shea. Usually the government is not the appellant, but in this case... That's right. This is an unexpected position for you to be in, Mr. Fresco. No, no worries, Your Honor. Leon Fresco on behalf of the United States, Your Honor. I'm appearing with my colleague, Sarah Fabian, who did a great job on the briefing, Your Honor. Your Honor, first of all, thank you for agreeing to hear this case on an expedited timeframe. The urgency of this case cannot be overstated because the government's ability to address surges in illegal immigration is being significantly compromised by the district court's order imposing an incorrect interpretation of a 20-year-old settlement agreement that was never contemplated by the parties and whose new interpretation is completely incompatible with the entirety of the four quarters of the text, Your Honor. It would be helpful for me, at least, if we addressed... I think there's two parts of the district court's order that are at issue on appeal. Yes, Your Honor. One is the part that says that the original order does mean to apply to accompanied minors. Yes, Your Honor. And the second part has to do with release of parents. As to the first part, it seems to correspond almost directly, in my view, to the language of the original settlement agreement and remedial... original settlement agreement. The original settlement agreement talks about what class is... what class is represented and who the people are that are the subject of the agreement. Why doesn't the original agreement... I know you moved to modify the alternative, but just taking that issue first. Yes, Your Honor. Why doesn't the original agreement apply to accompanied minors? Because the original agreement was a settlement of a case involving only unaccompanied minors. Let's start with who the four plaintiffs were in this original case that was filed in 1986. The four plaintiffs were unaccompanied minors. The class that got certified could only have been a class that was certified for unaccompanied minors, because there were no accompanied minors who were members of the class who could have had common or typical claims or who could have adequately represented this class. The district court certification was of all persons under the age of 18, blah, blah, blah, blah. Well, that blah, blah, blah, blah matter. No, it's not that blah, blah, blah, blah doesn't say, and I want to be clear, who have been or will be detained or denied release because a parent or legal guardian fails to personally appear to take custody of them. Yes, Your Honor. And then all persons under the age of 18 who meet certain other qualifications. Why are accompanied minors outside that definition? So, Your Honor, the paragraph one that you've read talks about the individuals whose parents are not available to pick up the children. That's the first part. So that's the unaccompanied minor. The reason they were in detention is because they were not apprehended with their parents. And then the second. Stop for a second. Yes, Your Honor. Will be arrested or detained pursuant to 1252. 1252 is the statute. Is the discretionary detention statute. Right. That statute is now what's known as 1226H. Right. By INS, which doesn't exist anymore. Within the INS's western region. And who have been or will be denied release because a parent or legal guardian fails to personally appear to take custody of them. Can you be accompanied and be in that class? No, Your Honor. That's the point. Why? If your parent is detained, how can your parent appear to take custody of you? Your Honor, the whole point is these individuals who are apprehended. And you can look at this from actually looking at the complaint. And it's important to read. Let's look at the class definition. Yes, Your Honor. The parent, what the plaintiff's position in this case is, is there's absolutely no difference between a parent who's detained with you and a parent who comes and picks you up. That's their position. Let's move on to paragraph 2. Yes. All persons under the age of 18 who have been or will be arrested, same thing, within the INS's region and who have been or will be subjected to any of the following conditions, none of which have to do anything with whether your parents are there, right? Well, Your Honor, that's tracking the complaint in this case. And it's important that we look at that. Because the complaint, the first eight paragraphs of the complaint in this case, paragraphs 1 through 6, talk about that the government is violating the law by detaining unaccompanied minors during the removal process unless they have a parent or legal guardian. But I'd understand it if this was an appeal from the order of class certification. But you settled this case. Yes, Your Honor. And when you settled this case, you settled it, and the settlement agreement doesn't make any distinction between the two, does it? Well, I want to get back to your first point, and I'll answer this point. I want to answer all the points. Number 2, on its face, without regard to what the complaint says for a second, certified class, the second certified class, you agree on its face, applies to accompanied minors. No, we do not, Your Honor, because the class that's certified has to be tethered to the four corners of the complaint. When you do a class certification, you're certifying the class that you're asking for certification. But what you're arguing is that the language is too broad, are you not? No, Your Honor. What we're saying is if you read the complaint filed in this case, paragraphs 7 and 8 in this case talk about the fact that these minors, the minors who were apprehended without parents, are now being detained in custody that doesn't meet certain conditions. So now let's move to the settlement agreement. Yes, Your Honor. I think it's even clearer. Paragraph 4 of the settlement agreement defines a minor as any person under the age of 18 who is detained in the legal custody of INS except for some people that don't apply here. And then paragraph 11, paragraph 10 defines the class as all minors who are detained in the legal custody of the INS. The government signed that agreement. Yes, Your Honor. How can we read that language as not applying to accompanying minors? Here's how you can read that, Your Honor. There are two key points to make in response to that. Point number one is even that line in isolation, the certified class in this action shall be defined as all minors who are detained in the legal custody of INS, is referencing the same thing that's in the second recital of the contract where it says, whereas this district court has certified this case as a class action on behalf of all minors. They're using it the same way. They're saying all minors in the recital, all minors in paragraph 10. And the case was not certified as a class of all minors. It couldn't have been because there was not an accompanied minor who had claims that were typical and representative of the class. So what this is telling us is when we are addressing this issue of all minors, we are addressing it within the context all of us know this in the case. But Justice Scalia said when he talked about unaccompanied minors, what the first recital says when it talks about unaccompanied minors, and what the second recital says when it says we had certified a class of all minors. No, we didn't. There was no way we could have certified a class of all minors because there were no accompanied minors with representative claims. So what you're arguing, correct me if I misapprehend it, is that although the settlement agreement on its face appears to cover all minors, it really can't because if you walk backwards to the complaint in the case that was brought only on behalf of unaccompanied minors. That only is that correct, Your Honor. But then if we look at the four corners of the entire rest of the contract, there are so many parts of the rest of the contract that are incompatible with an all minors definition that includes accompanied minors that you start to see the absurdity of that definition. So let's start with the first one. The influx, there are five of them. The influx provision, which is paragraph 12B, Your Honor, says that right now what the district court said is the only reason we can hold any family who crosses the border illegally for more than five days is because we happen to have 130 unaccompanied minors, which is a completely unrelated fact, in detention. Well, it would be nonsensical in a world where let's say we had 100,000 family units crossing the border each month to say that the only reason we can take longer than five days to process those people is if we happen to have this unrelated statistic of 130 unaccompanied minors in detention. That makes no sense. We would never have agreed to that. That's one provision. Well, but I don't know how district court may have said that, but B doesn't say that. B just says 130 minors. It says 130 minors housed in dependent facilities, Your Honor, and that word dependent minor actually is a term of art. A dependent minor is a minor who's been abandoned, abused, and neglected by their parent. So a dependent minor is not an accompanied minor. An accompanied minor is someone who's with their parent. They have a caring parent. Well, it says, well, there's more than 130 minors eligible for placement in a licensed program. Right, in a licensed program, and what a licensed program is defined as in the definition, Your Honor, number 6, paragraph 6, page 4 of the agreement, is any program, agency, or organization that is licensed by an appropriate state agency to provide residential group or foster care services for dependent children. And a dependent child. Licensed to provide care for dependent children. That doesn't mean that everybody who has to, I've read that. It seems to me what the agreement says is when we put whatever children are subject to the agreement, put this aside for a second, in a facility, we want it to be the kind of facility that the state has licensed for dependent children. It doesn't say the children must be dependent. It says the licensure must be for dependent children, doesn't it? Well, Your Honor, but that's been one of the core facts of this case, is that you wouldn't license a facility that's housing non-dependent children. This is one of the arguments that the plaintiffs are upset about, is they say, well, how can you have a facility that holds dependent children, sorry, how can you have a facility for dependent children that doesn't only have dependent children in it? That's their problem with the facilities. I understand, and they may have a, that's a problem that's not really in front of us. It's what you're fighting about in the district court now. But what I'm resisting is your notion that because the facility has to be licensed to take care of dependent children, that we must read the agreement as only extending to this term of art, dependent children. There is no evidence in this record, nor would there be, that anybody understood the meaning of what a licensed facility is for dependent children. The problem with this record is it's 20 years old and it's a settlement. Well, yes, Your Honor. So what people understood and didn't understand back then hasn't been tried. We haven't had a, on the face of the agreement, my difficulty with your argument, and I want to hear the rest of your arguments to be sure, is that on the face of the agreement, it sure seems to apply to all minors. Well, Your Honor, there are many other provisions that show you why it doesn't apply to all minors. But the licensing provision, nobody understood the licensing provision to mean that a minor would be housed in a facility. How do I know that nobody understood that? Is there a record in this case? Because I don't, you can ask the plaintiffs if they thought that. No, but we're not conducting an evidentiary hearing. Well, fine, yes, Your Honor. The judge said the agreement, I'm going to read the agreement on its face. How do I know that nobody understood that? Because it doesn't, it doesn't, there is no way to think that a facility that is licensed to house dependent children is suddenly housing parents in that. I guess what I'm having some difficulty with is this agreement may be poorly drawn. This agreement may be ambiguous in some respects. But with respect to its coverage, which children are subject to it, it seems to be quite clear. Well, let me explain why it's not clear, Your Honor, because there are other important provisions that show you that we're not talking about minors who are apprehended with their parents, that we're only talking about unaccompanied minors. The next one is the safety provision. The safety provision is a, well, we can get to safety provision in a second. Actually, I want to show you two others. The next one is the affidavit of support provision, which is in paragraph 15 of the agreement. This one is critical, Your Honor. The affidavit of support provision says that when you are releasing a minor, before a minor is released in INS custody, the custodian must execute an affidavit of support, form I-134, in order for the parent to take custody of the minor. Why is that important? Because in that form I-134, the person who's saying I'm supporting you has to show that they have an income, that they currently are earning income that is above the poverty line in order to support you. A parent who is apprehended at the border with their minor would simply never be able to Does that provision really apply to parents? Or wasn't, as I read that provision, what it's meant to do is when we're going to release a minor to somebody other than the minor's parents, we want to make sure it's a proper home. No, Your Honor. So you read that provision as saying that before somebody is released to his own parents, the parents must file an affidavit? Yes, Your Honor. That's why there's an order of preference. And if you go to paragraph 14, there's an order of preference. But when you read those two together, what tells me that the income provisions are supposed to apply to the parent? Because you can't release the child even to a parent if that's not going to be a suitable home. The state still has obligations, I mean, the government still has obligations to that child not to release that child from an instance where they are safe to an instance where there's actually not any evidence that the parent who's coming to get the child is going to actually support the child. But here's another key point, Your Honor. And just because I see the difficulty that Your Honor is having, if the agreement had contemplated that this would cover minors with parents, this is the most important fact. When the case was settled and when notice was given of the settlement and the new class that was certified, you can't only give a notice to minors, which is what was done in this case, and not to their parents. That would make that settlement legally invalid as a matter of law. If this really had contemplated minors and their parents, then you have to give notice to the parents and you have to give parents the right to object. And certainly parents might have objected under this settlement because there are things in here that are very objectionable with regard to a parent who might be in detention. There might be a parent who would prefer for their minor to remain in detention with them than for the minor to ask to be released to some distant relative. And this doesn't cover any of that. And so the settlement would be and is invalid if it's construed to apply to minors with parents who are able to care for them because those parents were never given notice or opportunity to object to the settlement. Did you ever, before the motion to enforce was brought, attack the validity of the settlement? Well, Your Honor, there was no need to attack the validity of the settlement because everybody by 2007 was clear and knew that this settlement didn't apply to the situation of accompanied minors and their parents. And how is that? Let me take you through the facts of what's happened over the history of this. In 2001, the government opens its first family residential facility, the Burks facility in Pennsylvania. That facility operates for three years. Nothing's happening. Nothing's going on. Nobody's objecting. Every six months, pursuant to the agreement, the government is giving notice to the plaintiffs of all class members in custody and isn't including these individuals at Burks because it's not part of the agreement. The plaintiffs don't complain. The plaintiffs file a lawsuit in 2004 saying you're violating the Flores settlement in 14 different ways, some of them so minute, like you're not giving a form to somebody. That's the kind of claims they're making. Never do they mention that you have this entire facility that houses parents and their minor children. That facility, those facilities continue. Your argument, again, is that we ought to go outside the four corners of the agreement to look at parole evidence to see what the parties understood their agreement to be? I'm making three arguments in succession. I know, and so this is the one you're on now. Yes, because first the argument is this is an unambiguous agreement in the sense that you have to look at it in the four corners. So as an analogy, the Constitution says in two places that all criminal trials shall be held by jury, and we have Supreme Court precedent saying that didn't mean all criminal trials. That meant criminal trials of cases above six months because of the context. So the four corners of this agreement show you the context, and it's unambiguous, but it doesn't apply. But because your time is running out, I'd really like you to concentrate on the second issue for me. Oh, sorry, yes, I'd like to reserve some time for everybody. And I know. Yes. And we'll give you some extra time. Thank you, Your Honor. This is an important case, and we want to get the parties argued out. With respect to the argument, you made a second argument to the district court, which was that even if this is what the agreement provides, you ought to change it. Yes, Your Honor. Because things are so different. And the district court said, no, the agreement contemplates an influx.  Your Honor, we're in a completely different world where the government's failure to be able to use its constitutional and statutory detention authorities having serious consequences. I know you say that. My question is the district court didn't conduct an evidentiary hearing on that. The district court said, no, the agreement shouldn't be changed because on its face, it contemplates changed circumstances. And that's fair. It does say that on its face. My question is, this is not a case where you said to the district court, we want to put on evidence to show our inability to comply. Well, Your Honor. Because I've read the record. Right. But the innit. You'll get time. Yes. I've read the record of what's going on now in the district court. And that seems to be the fight about what's going on now, which is to say, look, even if the order says what you say it says, Your Honor, we just can't do it. We don't have the resources to do it or the ability to do it. And that strikes me as a fair argument. But that's not the argument in front of us, is it? Well, Your Honor, it is an aspect of the argument in front of you. But let me make it clear when you speak of compliance. We can comply with the agreement even if it says release all aliens immediately. Don't even hold them at all. We could just have an open border. So the issue is not compliance. The issue is what are the ramifications of complying with the agreement. Because the ramifications of complying with this agreement are this situation where we are currently facing, Your Honor, a situation, and this was what was warned to the immigration judge, where people now know that if I come as a family unit, I won't be apprehended and detained. We now have people being abducted so that they can be deemed as family units, so that they can avoid that. I understand all those arguments. My point is really a procedural one, which is that the way this case comes to us, the judge had not conducted evidentiary hearing. Yes, Your Honor. And I agree that that is a flaw. Okay. So you are perfectly free, I think, on this record to go back to the judge and say, here's our evidence. We need this order modified if you think it means this, because there are parts of it that are just destructive. But that's not in front of us right now. I disagree with that, Your Honor. We provided evidence to the court about the ramifications of what would happen by not modifying the agreement. But you're addressing the issue of can we comply with the agreement. And compliance is a different. She rejected the ramifications. She rejected them facially. She said the agreement itself calls for, contemplates an influx. And we can put aside for a second an influx of what? Accompanied or unaccompanied minors. The agreement itself contemplates an influx, so I'm not going to change it. And that's a ruling that's based on the language of the agreement. At some point in time, we're dealing with real people here, real danger and real situations. Can't you come to her and say here's the evidence of why we have to change it? Here's the problem, Your Honor. We are currently under an injunction that doesn't allow us to show how and why our facilities work. The judge held this to a very difficult standard. She said I am not changing this unless you can show me that the facilities work to reduce the amount of illegal immigration that occurs. We can't operate our facilities the way we want to, to actually have that effect. So if we are going to remain under an injunction, we will never be able to provide to the district court the evidence that she thinks will be sufficient, the kind of MIT statistical studies that have, you know, that show causation versus correlation to show that because we won't be able to operate the facilities. We will have to continue to do what we're doing now, which is releasing the 90 percent of people who enter the country who can articulate a credible fear. And I guess what I'm having difficulty with is your reading of her order that says I won't listen to your evidence as opposed to, at least facially, without an evidentiary hearing, I'm not going to modify the agreement. Your Honor, I had this exact, I would refer you to the oral argument that I had before the district court where I literally made the point Your Honor made, and I asked for an evidentiary hearing, and I said these are the experts that Congress has, you have declarations from the experts that Congress has put forward to show you the ramifications of what will happen if you enter the kind of decision the plaintiffs want, and the judge rejected that. She said I find these to be uncredible. I don't remember the exact line. And so, Your Honor, the only evidence that the judge indicates in her decision that she finds will be credible are statistical causation analysis that we won't be able to provide to the court because we can't operate the facilities to show that. Now, wait, can I make one last point, Your Honor? You can, but you're well over your time. I'm going to let you go ahead. Yes, just one last thing. Even if the agreement, this is a really serious point, even if the agreement applies to accompany minors in the way, Your Honor, it says it might or might not, the paragraph about security, paragraph 14, which says when INS determines that it's in the safety interest of the minor to keep the minor in detention, that minor can still remain in detention, that would supersede everything else in the agreement because the alternative would be to break up that family and house the minor in a facility for abandoned and abused and neglected minors. Do you read the judge's order in this case as saying that when the minor's safety is better served by being with the parents that you still cannot do that? I read the judge's order, unfortunately, as saying when the minor's safety is not served, you have to release the parent, too. And that is a significant encroachment. That's a second issue. I want to take that. But that is a serious problem, Your Honor. Assuming that you win on that issue, assuming that for a moment that the district court erred in saying you had to release the parent, doesn't paragraph 14 work perfectly? Yes, it does, Your Honor. So if Your Honor rules that we don't have to release the parent and we can keep the minor with the parent because that is in the safety interest of the minor, instead of releasing that minor into an uncertain maybe trafficker, maybe cousin who we don't know who's a trafficker, et cetera, it's better to just keep the child with the parent for a very brief number of days so that we can work out whether they stay or whether they're being removed, then yes, that resolves the issue from the government's perspective. Why don't we move to the other side? We'll give you some additional time. Yes, Your Honor. And I appreciate very much the extra time. Thank you. Thank you. Good morning, Your Honor. May it please the Court. I guess just the first point I would make is my colleague from the Department of Justice make much of the fact that the complaint did not include any accompanied minors. I think that's incorrect. If you look at paragraph 34 of the complaint, it alleges that Plaintiff Hernandez was accompanied by an adult brother entrusted with her care and custody. I take it the class reps were all unaccompanied. Yeah, I honestly don't recall. And as you pointed out, when you actually look at that 1986 class definition, it certainly does not preclude coverage of accompanied minors. You could certainly have a child with a mother in custody and a brother of the mother who wanted to collect the child rather than having the child sit in custody. And the policy at the time was only to release to a parent or legal guardian so that if you had an accompanied minor with a mother in custody but her brother or the grandmother wanted to collect that child, the policy was now they would only release to a non-detained parent or legal guardian. So the way the class definition is written as to release, it could apply to accompanied or unaccompanied minors. Let's assume for just purposes of discussion that I agree with you with respect to the class definition. Can you address the judge's order about releasing parents? Because when you compare the language in the settlement agreement to the language in the remedial order, and this is a motion to enforce. You didn't move to alter the settlement agreement. Sure. It seems to me that facially the language in the order with respect to release of parents is broader than the settlement agreement. It might be what the law requires. I don't know. That's a separate issue. But that's not your claim. Your claim is that they're violating the settlement agreement. Could you address that for me? I will. Let me just take five seconds to mention before I'll get right to that, that there was also a memorandum of understanding in 1987, a year after the class was certified. And that memorandum of understanding is, if you take a look at it, it was, I don't know the docket number, but it was filed November the 30th, 1987. And that also ambiguously covers, quote, all juveniles detained by the former INS. And, in fact, that memorandum of understanding attaches and incorporates a shelter care program. And that shelter care program clearly states that minors with parents in the United States, that if the parent is undocumented, the child would be released to the parent's custody after the parent, who's in custody, has been processed by INS and assigned a deportation docket. So there's actually, just before I leave that subject matter, there's actually not only the class, but then there's a memorandum of understanding. And what was that? What's the context in which that was executed? That was executed as an interim, as a sort of partial settlement, primarily with regards to conditions, not with regards to release. So it was dealing with conditions, and it was limited to the western region. And so my point is just that if one's trying to discern what we were all thinking 10 years before the settlement, which I'm not sure it's very critical, given the language of the settlement, but I think it's wrong for the government to say, oh, nobody had in mind accompanying children, when that memorandum of understanding applies to, quote, all juveniles. And then the shelter care program that is attached to that specifically refers to accompanying partners. So if I may turn to the mothers question, I think it's important to understand or to appreciate that the district court was not, certainly did not try to expand the settlement or did not assume that somehow the class action was that mothers were actually parties to that class action. Let's look at paragraph 18 of the settlement agreement. It says, Upon taking a minor into custody, the INS, or the license program in which the minor is placed, shall make and record the prompt and continuous efforts on its part towards family reunification and the release of the minor pursuant to paragraph 14 above. And the paragraph 14 is an order of preference of release. Exactly. The order says, A class member's accompanied parent shall be released with the class member. And that's not what the settlement agreement says. Okay. Let me make two or three points about that. Firstly, if you look at the court order at page 8, July court order at page 8, what the court was concerned with and what the court directed herself to was, quote, ICE's blanket no-release policy with respect to the mothers cannot be reconciled with the agreements drawn to class members. And if the court had merely said, Your no-release policy with respect to mothers is inconsistent with the settlement agreement, my guess is the government would have a hard time objecting to that. But that's not what the court said. The court said, A class member's accompanied parent shall be released with the class member unless there's one or two or three contingencies which would make the release dangerous to the public or otherwise. That's just not what the settlement agreement says, is it? Well, I think the court went beyond that because what the court said is, quote, that the mothers shall be released, quote, this is at the record excerpts at page 8, in accordance with applicable laws and regulations. I'm saying I've got no quarrel with that, but the court's remedial order, I'm looking at ER 39 now, paragraph 4 of the order, and that's what I want you to focus on, says a class member's accompanying parent shall be released with the class member, and then it has other language. And my question is, doesn't that order go far beyond what paragraph 18 of the settlement agreement said? I don't think so, Your Honor. Number one, under paragraph 37, the court clearly has the power to enforce the settlement under a well-established settlement. No, no, nobody's objecting to that. This is a motion to enforce a settlement agreement. I understand, but you have to appreciate where we are when we're in front of this district court, and where we are is that one of the things that defendants is doing to not release the children is to have a no-release policy as to their mother. It doesn't have that no-release policy for any other woman who's arrested without a kid. It doesn't have that policy for fathers arrested with children. I'm saying, let's be clear, I entirely agree with you that if the government had a no-release policy, that was contrary to paragraph 18 of the settlement agreement. It prevented release of children.  Because they weren't releasing the child without releasing the mother. Right, because they weren't releasing the child for that reason. So my question is, why does the remedial order, a very narrow question, I understand that that policy may be illegal, but that's not what the remedial order says. The remedial order says a class member's accompanying parent shall be released with the class member in accordance with applicable laws and regulations, unless, and then it has a, which we don't have to go through. Isn't that more than what the settlement agreement provides? I don't think it is. It'd be like the government saying, no problem, we'll release to a parent, but five blocks from the detention center, we're going to set up a roadblock. We just won't let the parent get to the detention center. So now effectively, oh yeah, we're released to them, but no kid's being released because they've set up a roadblock. If a child had an uncle or an auntie or grandmother here, they weren't even releasing under those circumstances, and they should have. But at least under the settlement, you can have a mother stay in custody, and you can have the child released to the uncle or the auntie. But if the child does not have an uncle or an auntie to be released to, and really the only option is, I want to be released with, released with the parent with whom I was apprehended, which by the way the regulation in existence, which we sought in brief, ATFR 212A5 something or the other, that regulation specifically, which remained in effect today, remained in effect during when they implemented their detention policy, that regulation specifically contemplates releasing a child with a parent. But all of a sudden, in summer 2014, and there's just ample evidence. They'll say, oh, we didn't have a release policy. There were tons and tons of declarations filed that just unquestionably indicate they were not releasing the mother. And their policy was, well, if you do not release the mother, we're not going to release the child. So in effect, the policy of not releasing the mother, just for no good reason, I mean for no good reason other than this deterrence argument, which they then abandoned before the district court. And had they done that sooner, the court would have never ended that finding. But let me ask you this question a little bit differently and see if we can focus on something. Your briefs say, well, paragraph four of the remedial order really doesn't say we need to release parents, you know, willy-nilly. They just need to be released if they should. They shouldn't be discriminated against. We ought not apply a different standard to parents of accompanied minors than we do to people in the world. Anybody else. Anybody else in general. Correct. If that's what the order said, if the order were modified to say that, would you have a problem? No. You can't because you say that's what it says. Yeah. I don't know that it actually says it. But I want to ask the government the same question. But if it were to say what you think it says. No, I don't think we would because the judge was not asking the government to treat these mothers especially well. Well, the order says the parent shall be released unless they pose a significant flight risk or a threat to others in the national security. And those are pretty narrow exceptions. Yeah. Well, but elsewhere she clearly did say, including the record of excerpt of page 8, that it's to be done in accordance with applicable laws and regulations. Unless. Unless. But the description here is not a description of applicable laws and regulations, is it? That would not, as long as the order made clear that you cannot take the mothers of these children and treat them differently than you would treat any other adult just because they're the mothers. I'm very sympathetic to that claim. I'm just not sure that's what the order says. And if the net effect of that is that the children don't get released, then we've got a big problem with that. And I really think that's all the judge was trying to get at. And that's why I think she said that defendants' parents must be released, accompanying parent, in accordance with applicable laws and regulations. The only problem that. So if the paragraph ended there? Yeah. In accordance with applicable laws and regulations, you would have no problem with it. I would not have a problem with that. And I think that would accomplish. The only legitimate concern or the concern that we have is when the detention of the child is used to block the release of the child under the cell. Can you, and thank you for addressing this argument. That's probably out of the order that you wanted to. Could you address the government's argument that, in effect, given the injunction, we'll never be able to show that the programs actually work? That's a rephrase of the argument. You're fair enough. Rephrase it, too, and we'll give the government another shot at rephrasing it. Address that. Well, I think that that sort of the idea that this settlement could never, ever be amended is kind of would be an absurd idea and argument. No, I think the argument is slightly different. The argument is, look, when we signed this, it was a different time, and now we've had this enormous influx of accompanied minors because of conditions in Central America. Right. And we can't deal with them exactly the way this agreement says because conditions have changed, but the judge won't let us show her conditions have changed. Yeah, I don't think that's true at all. They submitted tons of declarations to the courts. The problem was that their declarations were all pretty vacuous, and they never addressed the key thing that they should have addressed. And if they have trouble implementing the settlement because of the numbers, which we don't think they do have, I mean, these detention centers that they've spent over 100 million dollars on are largely 70 percent empty right now. We did an inspection just three months ago. But let's say they did have a problem with numbers. There was a two-month period which caused this whole ruckus two years ago when the number of accompanied children apprehended went up by six-fold, but it only went up for about a 30-day period. But let's say they had a massive, let's say there's new wars, and they had a Central America major catastrophe, and they had much bigger numbers. It seems to me if I were them, I would come into court with a new motion to enforce, and instead of arguing, oh, the settlement doesn't apply to these children, which is how they spend 80 percent of their time, I would say, number one, numbers are just out of control. We cannot keep up with the numbers. Without regard to how the government structures its argument, I guess your position is that they're free to come back in and say we just can't comply. Absolutely. They could make a new motion, but they would have to address what would a court do? Courts sit in the equity, right? If courts are looking at revising and modifying a settlement, they're looking at the totality of the circumstances. They sit as courts of equity. Well, it's just logical. Any judge and any lawyer would say there's two or three things relevant to our inability to keep up with the numbers. Number one would be the numbers. What are the numbers? Well, the truth is right now, by the end of 2015, the numbers were down by 40 percent. Right. The numbers of company families. But whatever. Let's say it goes back up the numbers. But the second issue would clearly be the resources. What resources? Tell tell us about your resources. Tell us what resources have you assigned. Tell us why you cannot put more resources into this. Tell us about your resources. They never did that. And number three would be tell us about your efficiencies. If you're writing every decision on a piece of paper and then you take it a week to get it over to the asylum officer and then you bring it in a cart back to the ICE officer two weeks later, sure, you're going to be totally inefficient. So, yeah, absolutely. They come forward. They could file a new motion. They could present evidence about numbers, about resources, allocation of resources and about efficiencies. And they're free to try to convince a judge that the landscape has changed so significantly that they cannot they can no longer comply with the settlement. They haven't done that. There are proceedings now going on in front of the district court. There are. Second motion to enforce. We have filed. I know. I wasn't sure whether to mention that. Well, I'm not sure they're relevant to this, except I want to ask that. Not not regard to the merits of it, but what is the effect of the ongoing proceedings? In other words, can some of the issues that the government now raises be raised in those ongoing proceedings? Yeah. Or is the judge saying, no, I won't listen to them because I've already said. Well, number one, we don't know because the hearing is scheduled for the 24th of June. But I can't argue because I've thought about what you're raising. And so I've got some thoughts about it. One is that we think that the first issue on which is the contractual language, that's not going to change. This court might as well grapple with that. And and and I would I would just point the court to paragraph 12a because paragraph 12a, they keep saying, oh, it doesn't cover company miners. And paragraph 12a of the settlement acknowledges that the settlement covers a company class members by requiring that they will be allowed contact with, quote, family members who they were arrested with the minor. So paragraph 12a, I mean, all the other paragraphs are pretty clear as well, as you've sort of pointed out. But go back to your question. I think we're ready for a decision. It's been briefed. And and and and the first question that's before this court is just are they covered by this agreement or they not covered by the agreement? You know, when the agreement wanted to describe unaccompanied children, it knew how to do that. And there's at least five places in the agreement and in the attachments, the instructions to INS officers where we did address unaccompanied minors because we thought it was there. Their needs were unique and were different from accompanied minors, like if they were being transported or this or that. So when we wanted to address unaccompanied minors, we did. And we we we addressed them in three or four places in in the settlement. So I think and when and thirdly, when we wanted to exclude people from the settlement, we did. We did that in paragraph four and we specifically said, well, so and so is not included in so and so. So I honestly think that this issue about are they covered or not covered? It's it's it's it's it's it doesn't require a big factual hearing. No, no. It's the second issue. Yeah. So the question is, if they are covered, what what obligations does the government have with respect to their parents? Well, I think that's where, as I've suggested, I think the district court's remedial order may be broader than the agreement. So I'm trying to find out if if if you and the government agree that if if all that the district court had to order was that parents of accompanied minors shouldn't be discriminated against in in terms of their release. That's right. That's right. That that is absolutely what I believe. And I think you've got to read the first order and the and her remedial order together. I mean, I, I think that the she's let me put it this way. We're not going to run into court and we have not run into court. And and I think we would have a hard time running into court and seeking some order and say, oh, they're not releasing mothers pursuant to your order. Our only concern and the court's only concern was that. They were treating the mothers in a way that they weren't treating anybody else in the United States. Any other you could be a male, come across illegally tomorrow and you'd get treated better than this mother would get treated. Who is here seeking asylum with her kid? That that's what the court was trying to get at. And on the other question, which opposed to the government about, well, could the settlement ever change? Absolutely. No settlement is is written in stone. And we did we did anticipate surges. That's why it was put in there. And and there's absolutely no evidence that this agreement has the slightest causation effect on on what that surge that did happen in the summer of 2014 for one month. But again, they did not try to put on any evidence about resources. It's not just a numbers game. It's a resource game. The numbers we're talking about are nothing compared to their total apprehensions. Right. The family detention is a fraction of their total apprehensions. And it's only, I think, 50 percent. The accompanied minors that we're here talking about, they're able to process twice as many unaccompanied kids. Pretty. You know, I don't want to because there might be another motion down the road in the district court. So I don't want to say 100 percent, but at least they claim to be in total compliance with unaccompanied minors who double the number. I mean, why? Why should that? We've let you go about. Oh, OK. But four minutes over time. So unless Judge Gould or Judge Malloy have questions. No. OK. Thank you. Thank you. Thank you. Why don't you put we give him four minutes also. So thank you, Your Honor. I'll be extremely brief and address what I think are your remaining questions. So first, what should we do about this adult provision? What should we excise not excise? I believe that's I guess my question. Let me phrase it differently because I don't want a blue pencil sitting up here on the bench. But if if this provision merely says what the opponent thinks it says and we actually wrote it to say what it thinks it says, which is that there shall be no discrimination against parents of accompanied minors simply because they are parents of accompanied minors. Would that bother the government? Here's I would say the best answer, because it's going to require a little bit of nuance. The agreement itself says nothing about parents. And so anything that the order says about parents is changing the applicable constitutional, statutory and regulatory framework. If what the if what the plaintiffs are saying is that we were doing something that was unconstitutional against the statute, against the regulation, they can sue at any time about that's a procedural argument. No, but I understand it. I guess I'm asking I'm asking a bigger question. Yes, Your Honor. If if this if if the district judge's order simply says you may not discriminate in your release of of parents simply because they were accompanied by a child. Would how would that hurt the government in any respect other than your and my views about purism of procedure? No, this is not this is not a subjective thing. This is not something about purism of upper. This is actually a real life issue here, Your Honor. And here's why. Because this agreement would then be used as a way to enforce different aims that are not covered by the agreement. Let's talk. Let's. Why do I say, OK, but I understand that's the same. It's really the procedural argument. I'm asking a different question. If they brought a new lawsuit tomorrow. Yes, Your Honor. That said, we accuse you of discriminating against parents because they're accompanied. And the district court said, you can't do that. I'm entering an order that says you must treat parents who are accompanied by children in terms of your release policies. Exactly the same as those who were not. Would that cause the government of the United States a problem? It literally depends on how it's worded, because here's why the the entirety of the why is that? Why are the parents mentioned at all? And this is why the district court mentioned it, because it was used to nullify the key line of the entire agreement, which says that when the INS determines that for the safety interests of the minor, it's better to keep the minor with the parent than the minor can stay in detention with the parent rather than being released. So if what the district court said is I can fix that by requiring you to release the parent, which is nowhere part of the agreement. If that had not if that line, if that decision by the district court is nullified, that changes this case in its entirety. And so that's why it's important. If the plaintiffs actually have a concern with disparate treatment under the law, they should file that lawsuit. But this settlement in paragraph nine and in the judge's order in the district court, it's clear that it has nothing to say about detention of parents. And so to add remedial language that at all confuses this issue. Let me let me make the contrary point and see how you respond to this. The settlement agreement does say you should make every effort to for family reunification. And a lot of times the parent will be the only at least in some occasions, the parent will be the only person in the family that somebody can be sent. If you have a policy of never releasing the parent, then the policy of family reunification is thwarted. Is it not? Well, I would say two points. The actual language in the agreement says release to a parent, not with a parent, meaning that the parent wouldn't be in detention. That's why it says to not with. And that's critical. But secondly, you're right. So if you keep the parent in detention, you can't release. You wouldn't release to a parent. But the point is it contemplates a situation where mom or dad comes to get the minor, not where mom or dad is with the minor. Right. And the question I asked you, someone responded to it. And it's probably my fault. Let me let me try to get it clear in my brain. Yes. If if in order to thwart the release to a parent, the government says we can fix that. We'll just keep all the parents in detention, which is what they allege you did. Doesn't that isn't that isn't that that implicates this settlement agreement? I understand that that contention, Your Honor. And here's what I would say. That is a lawsuit that they can and should file. There actually was a lawsuit filed like that in the District Court of Columbia. And so that is a lawsuit that can and should be filed. But it is inappropriate to address the detention of, you know, if you if it just says all of all that you wanted to put in this agreement is detain mothers in no way different than anybody else. That's what the law is today. There's no way you finally got to the question. Although you don't think it should be in this agreement in this order. If it were in this order, it would cause you. Right. But the part of the problem with how you phrase it is it will engender future litigation. If there is in any way one parent or child detained that they that. OK, let me just say two quick lines about compliance versus consequences. We will never be able. We can always comply. We get it's very easy to comply with this agreement the way the plaintiffs want. We never detain anyone. We release people all the week. We would just release everybody into the United States. So we will never be able to have a compliance issue. The issue is what are the consequences of noncompliance and what would be helped by having these facilities? We will never be able to show that in the district court without actually operating the facilities. And finally, one last point with the use of unaccompanied. This is your. Yes, it is. I promise. With the use of unaccompanied minors, you can see the within the same paragraphs. They use unaccompanied minors and minors interchangeably. And all of the uses are about the initial arrest, not the subsequent decision to detain pending removal proceedings. So that's why it's not contemplating. Thank you, Your Honor. I appreciate all your generous time. Thank you. I want to thank both sides for their for their very good briefing and arguments in this case. And with that, the case is submitted and we are recessed. Thank you, Your Honor. I appreciate.
judges: Gould, Hurwitz, Melloy